T.C. Memo. 2000-382

UNITED STATES TAX COURT

DYNADECK ROTARY SYSTEMS, LTD.,
MARTIN LETTUNICH, TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1199-99.                    Filed December 18, 2000.

Martin N. Lettunich, pro se.

<u>Paul K. Webb</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case was submitted to the Court fully
stipulated under Rule 122.  Respondent issued to petitioner a
notice of final partnership administrative adjustment on behalf
of Dynadeck Rotary Systems, Ltd. (Partnership) with respect to
the Partnership's 1991 and 1992 taxable years.  Following

concessions, we must decide whether the Partnership had debt that allowed its partners to increase their bases in the Partnership under section 752(a). We hold it did not. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the relevant years. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties have filed with the Court a stipulation of facts and related exhibits. We find the stipulated facts accordingly and set forth the relevant facts in this background section. The Partnership's principal place of business was in Saratoga, California, at all relevant times.

In late 1990, Matthew Schadeck (Mr. Schadeck), three of his colleagues[1] (Mr. Schadeck and his three colleagues are collectively referred to as the individuals), and Dynadeck Rotary Systems Incorporated (Corporation), a California S corporation, formed the Partnership to develop an idea that Mr. Schadeck had for a new rotary engine. The individuals had incorporated the Corporation on December 18, 1990, and they were its only shareholders. The individuals intended that the Corporation would secure funding for the rotary engine's development, and

---

[1] The colleagues' names are Garon Handley, Fred Schadeck, and an attorney named Martin Lettunich (Mr. Lettunich).

they used the Corporation's funds to pay a majority of the Partnership's expenses.

Also in late 1990, the Laurel Assets Group (LAG), an unrelated investment group, expressed interest in investing in the Corporation. Mr. Lettunich met with representatives of LAG to discuss its interest, and LAG advanced $150,000 to the Corporation on December 19, 1990. LAG and the Corporation agreed that the Corporation would repay LAG the $150,000, with interest, by December 31, 1991, if they did not reach an investment agreement by January 31, 1991. As of December 19, 1990, LAG and the Corporation believed they would agree to an investment of up to $350,000 by January 31, 1991, at which time they would consider the $150,000 part of that investment.

Mr. Schadeck applied to patent his idea on February 8, 1991. He transferred his rights in that application to the Partnership approximately 1 year later, and the Partnership immediately assigned those rights to Magnitude Technologies Incorporated (Magnitude), a corporation whose shareholders were the individuals.

LAG advanced another $200,000 to the Corporation in the first half of 1991, making LAG's total advance $350,000. The Corporation asked LAG to take an interest in the Partnership in consideration for the $350,000. LAG asked that the $350,000 be converted into a royalty arrangement.

As of January 1992, the Corporation and LAG had not agreed to the terms under which they would characterize the $350,000 as an investment in the Corporation.  On January 27, 1992, LAG informed the Corporation that LAG was considering the $350,000 as debt owed to it by the Corporation as of December 31, 1991, and that the Corporation was in default of that debt.  LAG agreed at that time to lend an additional $50,000 to the Corporation, making the total debt $400,000.  LAG agreed to cancel the entire debt if it and the Corporation reached a royalty or other satisfactory agreement by February 29, 1992.  On January 27, 1992, Mr. Lettunich, in his capacity as secretary/treasurer of the Corporation, signed a promissory note in which the Corporation agreed to pay $400,000, with interest, to LAG by February 29, 1992.  Neither that note, nor the enclosed letter from LAG to the Corporation, referenced the Partnership.  Nor did either the note or the letter provide that the debt was secured.

On February 2, 1994, an agreement concerning the $400,000 was reached between LAG, on the one hand, and Magnitude, the Partnership, and the Corporation (collectively, the Dynadeck group), on the other hand.  Pursuant to that agreement, which provided that it was effective as of January 1, 1991, the Dynadeck group agreed that in consideration of the $400,000, they would, among other things, pay to LAG a royalty equal to 5 percent of the gross receipts received by the Dynadeck group.

On July 8, 1994, the Partnership filed its 1991 and 1992 Federal partnership information returns with the Commissioner. Those returns did not report any liabilities of the Partnership for the related years.

## Discussion

Section 752(a) allows partners to increase their bases in a partnership by an increase in their share of partnership liabilities. See also sec. 1.752-1(b), Income Tax Regs. Respondent determined that the Partnership had no debt during 1991 or 1992 that would allow the partners to increase their bases under section 752. Petitioner argues that the $400,000 owed to LAG was a Partnership debt that increased each partner's basis in the Partnership during 1991 and 1992. Petitioner acknowledges that LAG transferred the $400,000 directly to the Corporation and that the promissory note listed the Corporation as the obligor but asserts that the Corporation received the $400,000 as the Partnership's agent.

We disagree with petitioner that the partners may increase their bases in the Partnership to reflect the $400,000 debt. The facts of this case do not establish that the Partnership was ever liable to repay any of that amount. The sole evidence that we find in the record as to a debtor/creditor relationship is the promissory note which provides clearly that the Corporation owed the money to LAG. The note says nothing, nor is there evidence,

to support petitioner's claim that the Corporation executed that note as the Partnership's agent or that the Partnership was liable for the note's repayment.  Nor is there any evidence of a written agreement identifying the Corporation as the Partnership's agent, or evidence that the Corporation was held out as the partnership's agent in dealings with LAG or another third party.  See Commissioner v. Bollinger, 485 U.S. 343, 349-350 (1988).

Our conclusion is supported by the fact that the Corporation's role in the Partnership was to secure funds for the Partnership and that the record is barren as to any obligation or effort on the part of the Partnership to secure its own funds. Nor do we find that any of the Partnership's partners, except the Corporation, had such an obligation.  In fact, each of the partners appears to have contributed something unique to the Partnership.  In the case of Messrs. Schadeck and Lettunich, for example, the former contributed his rights in the underlying patent, and the latter contributed his legal skills and his labor.  The Corporation expected to, and did, generate and contribute funds to the Partnership.

We hold that the Partnership was not liable for any part of the $400,000 owed to LAG and, accordingly, that no partner is entitled to increase his or its basis in the Partnership on account of that debt.  We have considered all arguments for a

contrary holding, and we reject all arguments not discussed herein as without merit or irrelevant.

<u>Decision will be entered under Rule 155</u>.